IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DONALD W. MAIER,

                                                           OPINION AND ORDER

                  Petitioner,

                                                             17-cv-365-bbc

     v.

LIZZIE TEGELS,

                  Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In 2006, petitioner Donald W. Maier was convicted of making threats to two state court judges. Five years later, after he had been released from custody, he sent two letters to each of the ten persons who had served as jurors in the 2006 case, asking them to help him secure a pardon and expressing negative opinions about his treatment in the prison system. After some of those jurors complained to law enforcement about the letters, the state charged petitioner with stalking, in violation of Wis. Stat. § 940.32(1)(a)7. He was found guilty after a jury trial and sentenced to a term of 15 years' imprisonment and 12 years of extended supervision.

Petitioner appealed from his sentence, but was unsuccessful in the state courts. He now moves for relief in federal court, challenging the constitutionality of his conviction, the state's failure to show that he had the requisite intent to threaten the persons who received his letters, the sufficiency of the evidence, the jury instructions and the adequacy of the

1

representation provided by his counsel. Because his claim has been adjudicated on the merits in the state courts, his motion cannot be granted unless he can show that the previous adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Despite his counsel's vigorous advocacy, petitioner has not shown that the decision of the Wisconsin Court of Appeals in his case meets the criteria for reversal. This is not surprising; the standard for federal court reversal of state court convictions is "difficult to meet." Harrington v. Richter, 526 U.S. 86, 102 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this court's precedents; it goes no further." Id.

BACKGROUND

Petitioner Maier is serving a 27-year sentence imposed on him after he was convicted of six charges of being a repeat "stalker," in violation of Wis. Stat. § 940.32. He was found guilty of the charges in 2012, after a jury found he had intentionally sent copies of two different letters on two different days to each of six persons who had served as jurors in his 2006 criminal trial. The jury found also that the receipt of the letters would have caused a reasonable person to suffer serious emotional distress and did cause serious emotional distress to the recipient. (Petitioner sent letters to a total of 13 former jurors, but the letters to three of them were returned to him as undeliverable and the jury found that four of the former

2

jurors had not found the letter intimidating.)

The state circuit court imposed separate sentences on petitioner for each conviction of two and one-half years of confinement plus two years of extended supervision, giving petitioner a total sentence of 15 years in prison plus 12 years of extended supervision.

The first of the two letters petitioner sent included materials related to pardons, as well as a seven-page handwritten questionnaire directed to the jurors that began with a statement:

> Jury Duty
> is
> Not Over.

> I did 2 years in prison and because of the power Judge Zappen had I got skrewed. Now I'm going for a Pardon with the Governor's office. And I will need your help.

A number of question followed, including,

> 1. Do you think Wood County did a Professional Job? Such as keeping your Name's and addresses from someone like me?
>
> Yes _____ or No _____

> Note you good people help poor Judge Zappen put me in prison. Real good people in there.

> 2. Can I give this list o[f] Jurors to the people I had to live with?
>
> Yes _____ or No _____

> 3. Did you know Judge Zappen was harassing me and threaten me?

\* \* \* \* \* \*

> 8. Did you know I had a 50,000 volt zapper on my arm to control what I might say to you?

\* \* \* \* \*

3

> 12. If you were harassed by the police[,] threaten[ed] and harassed by the Wood County DA and Judge Zappen[.] Also Judge Mason and many more.
>
> [And] You ended up in a Mental ins. and than 2 years in prison on a corrupt trial.
>
> How much money would that be worth to you?
> one dollar _____one million dollars
> _____10 million dollars
>
> Please write your price here $ _____ For 2 year's in Prison

At the end, petitioner wrote,

> My story will be heard nationwide soon. Your names could be too. Because you helped in the Judge Zappen conspiracy. Feel free to call the police [,] the DA's office in Wood County or [the clerk of court]. And please do the Right things. Mail this to the Governor's Pardon Advisory Board 115 East State Capitol, Madison WI 53702. . .. The sooner I get justice will be when everybody in the Wisconsin Rapids police cover-up and the Judge Zappen conspiracy will get peace. No more letters.

Sometime after petitioner sent this letter, a Wisconsin Rapids newspaper reported that an unidentified woman had received a threatening letter from a man for whose trial she had been a juror. On or about November 14, 2011, petitioner sent a second letter to the jurors, denying that he had intended to threaten them:

> I read the paper too. My [prior] letter was not threatening in any way. I just want to let you see what kind of Idiots you helped put me in prison. I feel Judge Zappen and Judge Mason were two the Biggest corrupt gangsters in Wood County. "you have Nothing to fear from me." Please call a [state representative or the governor].

Petitioner signed the letter, "your friend from Planet of the Appeals Courthouse in downtown Zappenville, Donald Meier." Dkt. #6, exh. #6, at 13.

At the trial, nine of the ten jurors who had received letters from petitioner testified

that the letters had caused them to feel either threatened or intimidated or both. For example, one juror testified that she had been terrified that petitioner had her address and knew her occupation and that she feared for her safety and that of her children because her husband was often away. Tr. trans., dkt. #6-9, pp. 160-62. The tenth juror testified that the letter had shocked him and made him angry but had not intimidated him. The jury deliberated for two days before finding petitioner guilty of six of the ten charges against him.

After sentencing, petitioner filed a post conviction motion in the Circuit Court for Wood County, Wisconsin, on April 4, 2013, contesting the state court's determination that Wisconsin's stalking statute did not punish him for unintended threats, that the statute was constitutional as applied to him and that his counsel was not ineffective. This last claim was based on counsel's post trial discovery that he had a condition known as supraventricular tachycardia. In testimony given at the state post conviction hearing, counsel testified that during the trial he had felt fatigued and had trouble organizing his thoughts.

When petitioner's post conviction motion was denied, he appealed his convictions to the Wisconsin Court of Appeals. He contended that the stalking statute was unconstitutional as applied to him; the state's evidence did not support a finding that the letters he sent amounted to true threats under an objective standard; the jury instructions were improper because they relieved the state of the burden of proving that petitioner's letters were true threats; his counsel failed to introduce evidence that petitioner's pardon application was genuine and he had no intention to threaten the former jurors; his counsel failed to provide him adequate assistance; and his counsel's medical problems had had an

5

adverse effect on his ability to represent petitioner effectively.

After the court of appeals denied petitioner's appeal, State v. Maier, 2014 WI App 71, 354 Wis. 2d 623, 848 N.W.2d 904, petitioner sought review in the Wisconsin Supreme Court, renewing the claims he had raised in his earlier motions. Before that petition was decided, the United States Supreme Court granted certiorari in United States v. Elonis, 730 F.3d 321 (3d Cir. 2013), which raised an issue potentially relevant to the one petitioner had raised in his case. Petitioner obtained a stay of appellate proceedings from the Wisconsin Supreme Court on June 26, 2014. After the United States Supreme Court decided Elonis, 135 S. Ct. 2001 (2015), petitioner filed an amended petition for review in the Wisconsin Supreme Court, relying in part on the new decision. (The Supreme Court ultimately avoided the First Amendment question in Elonis, deciding that case on statutory grounds.) The court denied review on September 9, 2015, dkt. #6-3, and petitioner filed a petition for a writ of certiorari in the United States Supreme Court on February 5, 2016. This petition was denied on May 16, 2016. On May 15, 2017, petitioner filed this timely petition for federal habeas corpus relief under 28 U.S. § 2254.

OPINION

Petitioner challenges his conviction on five grounds: (1) his conviction under Wisconsin's stalking statute, Wis. Stat. § 940.32, is unconstitutional because it punished him for unintended threats, in violation of the First Amendment; (2) the state failed to produce sufficient evidence to show that the letters he sent to the former jurors were "true threats"

6

under an objective intent standard; (3) the state court's jury instructions relieved the state of its burden of proving that petitioner's threats were true threats; (4) his counsel was ineffective in failing to introduce evidence of petitioner's efforts to obtain a pardon or of the effect of the letters on various listeners; and (5) counsel's medical condition prevented him from providing effective assistance to petitioner.

A. <u>First Amendment Challenge</u>

Petitioner argues that his conviction for stalking under Wis. Stat. § 940.32 is unconstitutional because the statements in his letters are protected by the First Amendment. He acknowledges that the First Amendment does not preclude restrictions on certain types of speech, including "true threats." <u>Watts v. United States</u>, 394 U.S. 705, 708 (1969) (states may ban "true threats" without violating First Amendment). However, petitioner argues that his statements are not "true threats" as that term has been defined by the United States Supreme Court. Specifically, he argues that under <u>Virginia v. Black</u>, 538 U.S. 343 (2003), the state had to prove that he actually intended his comments to be threatening. Petitioner argues that because Wisconsin's stalking statute does not require the state to prove intent, his conviction is unconstitutional. In response, the state agrees that petitioner's speech is protected unless it qualifies as a "true threat," and further agrees that the state's stalking statute does not require the state to prove that petitioner intended to threaten the jurors. However, the state argues that the "true threat" standard is an objective one, requiring only that a reasonable person would have known that the

statements in the letters were threatening.

In arguing that the state was required to prove that he actually intended to threaten the recipients of his letters, petitioner relies on the Supreme Court's discussion of "true threats" in <u>Black</u>, <u>id</u>., at 343. In that case, the Supreme Court considered the constitutionality of a Virginia statute making it a criminal offense to burn a cross with intent to intimidate. <u>Id</u>. at 347-48. The Court invalidated the statute on First Amendment grounds, <u>id.</u> at 367, but the justices were divided on the rationale. In particular, they could not agree on (1) whether the statute impermissibly discriminated on the basis of content or viewpoint and (2) the validity of a particular provision in the statute that made the burning of a cross prima facie evidence of the defendant's intent to intimidate. The case produced five opinions: a plurality opinion by Justice O'Connor (joined by Chief Justice Rehnquist, Justice Stevens, who also wrote a brief concurrence, and Justice Breyer); an opinion by Justice Scalia concurring in part and dissenting in part (joined in part by Justice Thomas); an opinion by Justice Souter concurring in part and dissenting in part (joined by Justices Kennedy and Ginsburg); and a dissent by Justice Thomas.

The lead opinion in <u>Black</u> defined true threats as follows:

> 'True threats' encompass those statements where the speaker *means to communicate a serious expression of an intent to commit an act of unlawful violence* to a particular individual or group of individuals. . .The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm

8

or death.

Id. at 359-60 (emphasis added).

Citing this language from Black, petitioner argues that a statement qualifies as a true threat only if the speaker subjectively intended it as a threat. He argues that the provisions considered in Black were found ultimately to be unconstitutional because they allowed the government to convict a defendant even if he did not intend to threaten the victim. Petitioner further argues that, like the statute at issue in Black, Wisconsin's stalking statute allowed the state to convict him even though he did not intend to threaten the recipients of his letters.

Petitioner's reading of the stalking statute is correct. Specifically, the statute provides that anyone who meets the following criteria is guilty of a Class I felony:

> (a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his family or household.
>
> (b) *The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress* or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.
>
> (c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

Wis. Stat. § 940.32(2) (emphasis added).

Thus, the state had to prove only that petitioner "should have known" that the jurors receiving his letter would feel threatened, not that petitioner actually intended to threaten

9

the jurors. Indeed, the jury was instructed that petitioner could be convicted even if he did not intend to threaten the jury. Tr. trans., dkt. #6-10, at 27-28 (jury instructed that it had to decide whether petitioner *knew or should have known* that at least one of his acts constituting the course of conduct would "cause the specific person to suffer serious emotional distress.") Id. at 28. Additionally, during his closing argument, the prosecutor told the jury that it did not have to prove that petitioner intended to harm anybody, that he intended to carry out his threats or even that he actually intended that anybody feel threatened; all the state had to prove was that petitioner engaged intentionally in the course of conduct. Tr. trans., dkt. #6-10, at 63-64.

Before Black was decided, the law in the Seventh Circuit regarding true threats had been an objective standard: "an inquiry that asks whether a reasonable speaker would understand that his statement would be interpreted as a threat (the 'reasonable speaker' test) or alternatively, whether a reasonable listener would interpret the statement as a threat (the objective 'reasonable listener' or 'reasonable recipient' test)." United States v. Parr, 545 F.3d 491, 499 (7th Cir. 2008). See also United States v. Fuller, 387 F.3d 643, 646 (7th Cir. 2004) (communication is true threat if "reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm"). However, the court of appeals has questioned whether Black indicated a shift away from the objective standard, stating the following:

> It is possible that the Court was not attempting a comprehensive redefinition
> of true threats in Black; the plurality's discussion of threat doctrine was very

10

brief. It is more likely, however, that an entirely objective definition is no longer tenable. But whether the Court meant to retire the objective 'reasonable person' approach or to add a subjective intent requirement to the prevailing test for true threats is unclear.

Parr, 545 F.3d at 500. The court of appeals decided it "need not resolve the issue" in Parr, id., and has not squarely addressed it since.

Several other courts have addressed the issue, with some courts accepting the interpretation offered by petitioner and concluding that Black requires a subjective intent true threat analysis. See, e.g., United States v. Heineman, 767 F.3d 970, 979-82 (10th Cir. 2014); United States v. Bagdasarian, 652 F.3d 1113, 1116 (9th Cir. 2011) (holding that threat, even one "objective observers would reasonably perceive . . . as a threat of injury or death," cannot be prosecuted unless speaker subjectively intended speech to be threat). Other courts have concluded that an objective test is still tenable after Black. See, e.g., United States v. Clemens, 738 F.3d 1, 9–12 (1st Cir. 2013); United States v. Elonis, 730 F.3d 321, 327–32 (3d Cir. 2013); United States v. Martinez, 736 F.3d 981, 986–88 (11th Cir. 2013); United States v. Nicklas, 713 F.3d 435, 438–40 (8th Cir. 2013); United States v. Jeffries, 692 F.3d 473, 479–81 (6th Cir. 2012); United States v. White, 670 F.3d 498, 508–10 (4th Cir. 2012). (Notably, these decisions all interpreted 18 U.S.C. § 875(c), and were abrogated on statutory grounds by the Supreme Court's decision in Elonis,135 S. Ct. 2001 (2015)). In reviewing petitioner's claim on appeal, the Wisconsin Court of Appeals accepted the interpretation of the majority of courts and concluded that the state had to prove only objective intent for the true threat analysis. Maier, 2014 WI App 71, ¶ 21.

Although it is a close question, I conclude that petitioner's interpretation of Black

is too broad. The Supreme Court did not state expressly in <u>Black</u> that the true threats exception requires proof of a subjective intent to threaten and it did not overrule previous circuit decisions applying objective intent standards. Instead, the Court said that "true threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence." <u>Black</u>, 538 U.S. at 359-60. This statement could be interpreted to mean that the speaker must intend to communicate a threat. On the other hand, it can also be interpreted as supporting a general-intent standard that requires examining the objective characteristics of the speech act. Under a general-intent standard, the speaker must intend to communicate the statement found to be threatening, but does not have to intend to threaten or intimidate the victim. In the same way he need not subjectively intend to actually carry out the threat. In light of the multiple ways in which <u>Black</u> may be interpreted, I cannot conclude that <u>Black</u> "clearly established" that proof of subjective intent is required to prove a true threat. It follows, therefore, that the Wisconsin Court of Appeals' decision was not based on an unreasonable application of "clearly established" law that a true threat requires proof of intent to threaten. Accordingly, petitioner is not entitled to habeas relief on this claim.

B. <u>Sufficient Evidence to Support Finding of "True Threats"</u>

Petitioner next contends that the state failed to produce sufficient evidence to support the jury's finding that the letters he sent the former jurors were true threats when considered from an objective standpoint. In particular, petitioner points to the Wisconsin

12

Supreme Court's definition of "true threats" in State v. Perkins, 2001 WI 43, 243 Wis. 2d 141, 626 N.W.2d 762, a case involving a defendant's conviction for threatening a judge. In Perkins, the court found that the state's jury instruction relating to threats was inadequate because it did not "shield the defendant from a conviction based on constitutionally protected speech." After canvassing the law on the subject, the court decided that

> [a] true threat is determined using an objective reasonable person standard. A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as *a serious expression of a purpose to inflict harm*. It is not necessary that the speaker have the ability to carry out the threat. In determining whether a statement is a true threat, the *totality of the circumstances* must be considered.

Id., 2001 WI 46, ¶ 29, 243 Wis. 2d at 158-59, 626 N.W.2d at 770 (emphasis added).

Petitioner takes issue with the court's alleged failure to apply the sufficiency standard set out in Jackson v. Virginia, 443 U.S. 307, 324 n.16 (1979)(state prisoner attacking his conviction is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt"). As I understand the argument, petitioner is contending that the court of appeals failed to consider whether there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that his statements to the jurors were "a serious expression of a purpose to inflict harm," as distinguished from other kinds of expressions. Instead, the court discussed whether petitioner's letters were "ominous," "odd" and "threatening." Additionally, petitioner contends, the court considered only isolated passages of the letters, rather than considering the "totality of the circumstances," including

13

when he wrote the letters, all of the statements in the letters and his clear lack of sophistication. Finally, petitioner contends that even if the state can prove that the first round of letters he sent to the former jurors were threatening, it did not prove that he had engaged in two or more threatening acts carried out over time, showing a continuity of purpose.

None of petitioner's arguments is persuasive. The court of appeals considered the totality of the circumstances, including petitioner's explanation that he was simply attempting to enlist the jurors' help in obtaining a pardon. Maier, 2014 WI App 71, ¶ 33. Additionally, the court of appeals considered whether petitioner's statements were a "serious expression of a purpose to inflict harm," concluding that a reasonable juror receiving the letters could understand petitioner to be threatening her with harm if she failed to support his pardon petition. Id. at ¶ 35. There is no weight to petitioner's complaint that the court of appeals considered only isolated passages of petitioner's letters to the former jurors, calling them "ominous," "odd" or "threatening." It is clear from a review of the court's opinion that the court reviewed the letters only to show that the jury had a basis for its finding that petitioner was guilty of stalking under Wis. Stat. § 940.32. Although petitioner complains that the court considered only isolated passages from the letters instead of all the evidence admitted at trial, that it omitted evidence that petitioner had had no contact with the former jurors in the five years between their finding him guilty and that his letter included his request that the former jurors write to the pardon board on his behalf, the record suffices to show that the jury had sufficient grounds for its finding of guilt. It is true that the jury could have returned not guilty verdicts on all ten counts against petitioner, because the issues were close ones, but it does not

follow that it lacked sufficient evidence as to the six counts on which it found petitioner guilty. Examining that evidence in the light most favorable to the state court, as I must, I cannot find that the jury's decision was an unreasonable one.

Finally, the court of appeals rejected petitioner's argument that each letter sent to a juror had to be sufficient by itself to constitute a true threat, concluding instead that the first and second letters could be considered together. Id. at ¶ 40. I agree. Petitioner may well be correct in arguing that the second letters were not threatening in themselves, but nothing in the statute requires that each of the two letters had to be threatening. The second set of letters came on the heels of the first letters, which the jurors could have experienced as a drawn out, continuing attack. Thus, it was not unreasonable for the jury to find the state's evidence sufficient to support its verdict. The jury had a reasonable basis for its verdict that petitioner was guilty of sending threatening letters to six of the former jurors.

C. The Jury Instructions

Taking another tack, petitioner contends that the court's instructions relieved the state of its burden of proving the letters to be true threats under an objective standard. In particular, petitioner contends that the jury instructions in his case failed to incorporate the true threat test set out in Perkins, 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 762, which requires a showing that "the defendant 'threatened to cause bodily harm.'" He calls the instructions given the jury on this point inadequate because they did not require such a showing, but "merely" asked the jury whether petitioner's acts or statements caused the victim to suffer "serious emotional

15

distress," which was further defined as feeling "terrified, intimidated, threatened, harassed, or tormented." Petitioner expands on this argument by saying that the language of § 940.32 could apply to any kind of threat, including a vague feeling of being threatened, but given the specificity of the language used in the statute, I find this assertion unpersuasive.

Section 940.32 requires a finding that the actor engaged intentionally in a course of conduct, that the course of conduct was directed at a specific person and that the conduct was such that it would cause a reasonable person under the same circumstances to suffer serious emotional distress. In addition, the state must prove that the actor knows or should know that at least one of his acts will cause the specific person serious emotional harm. In other words, the actor must act intentionally; he must act in a way that would cause a reasonable person serious emotional harm, which is further defined in the instructions; he must know or should know that his acts will have that result; and the specific person or persons must actually suffer such harm. These instructions meet the standards set by the state in <u>Perkins</u>. Accordingly, I conclude that petitioner has not shown that the Wisconsin Court of Appeals' conclusion that the jury instructions accurately reflect Wisconsin law should entitle him to habeas relief.

### D. <u>Counsel's Alleged Ineffectiveness</u>

Turning to a different challenge, petitioner contends that his counsel was ineffective in failing to introduce evidence of the trips that petitioner and his neighbor took to Madison to obtain applications for pardons and about petitioner's own efforts to obtain information about the pardon process. However, petitioner has not explained persuasively how this evidence would have helped his defense. He never applied for a pardon, so it is unlikely that the jury would
16

have given much weight to his claim that his only reason for writing the former jurors was to obtain their help in supporting a pardon application. Moreover, nothing in the record suggests that the neighbor knew anything about petitioner's case other than what he had told her. Additionally, as the court of appeals pointed out, "there is nothing inherently inconsistent with [petitioner] subjectively desiring a pardon and a jury finding that he knew *or should have known* that his letters to the 2006 jurors would reasonably be perceived as threatening." Maier, 2014 WI App 71, ¶ 54. Regardless whether the jury believed that petitioner intended to apply for a pardon, the jury could still conclude that petitioner's statements were threatening. Indeed, the jury could have concluded that the recipients of the letters believed petitioner would harm them if they failed to support his pardon application.

Petitioner also argues that his counsel was ineffective in not introducing the testimony of at least one law enforcement officer who had read a copy of one of the letters petitioner sent to the former jurors and did not find it intimidating. Petitioner does not explain what value such testimony would have had and I can think of none. It is predictable that a person with a law enforcement background would be less likely to be intimidated by a letter of the sort petitioner sent the former jurors. The question for the trial jury was not what the effect would have been on police officers or sheriff's deputies, but the effect it had on ordinary citizens who lack that training and experience.

Petitioner's dissatisfaction with his counsel seems to be that counsel did not adduce evidence of petitioner's lack of intent to threaten the former jurors, but as discussed above, neither § 940.32 nor the "true threats" exception requires "intent to threaten." The statute

requires only that the state prove that a reasonable person writing and sending the letters knew or should have known that the letters would be perceived as threatening by reasonable persons receiving them.

### E. Counsel's Medical Problems

Finally, petitioner believes that he was denied an adequate defense because his counsel had a heart condition that caused him to be more tired than usual. There is no dispute that counsel was not aware at the time of trial that he had developed the particular condition, but petitioner has not adduced any evidence to show that the condition prevented counsel from giving petitioner an adequate defense. It appears that counsel noticed the condition on the first day of the two-day trial and that he asked for, and was granted, an adjournment of the trial at the end of the day, which was a Friday. When trial resumed on the following Monday, counsel continued to represent petitioner. Petitioner has not adduced any evidence of any specific problems that would have made counsel incompetent to represent him during the trial. Accordingly, his motion will be denied on this ground as well.

I conclude therefore that petitioner has failed to show that the state court of appeals' conclusion in this case was "so erroneous 'that there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's precedents]." Harrington v. Richter, 562 U.S. 86, 102 (2011). See also Nevada v. Jackson, 569 U.S. 505, 508-09 (2013).

CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2254 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). In this instance, I consider it possible that the petition could have been resolved differently. Accordingly, I am granting petitioner's request for a certificate of appealability.

ORDER

IT IS ORDERED that petitioner Donald W. Maier's motion for relief from his sentence under 28 U.S.C. § 2254 is DENIED. However, a certificate of appealability will issue.

Entered this 2d day of May, 2018.

                BY THE COURT:

                /s/

                _____
                BARBARA B. CRABB
                District Judge